LINDA L. Cox, Adm'r of the Estate of Colbert L. Snider, Deceased, Plaintiff-Appellee, *v.* EMPLOYERS LIFE INSURANCE COMPANY OF WAUSAU *et al.,* Defendants.—(BONITA S. SNIDER, Defendant-Appellant.)

(No. 74-63;

Fifth District—January 16, 1975.

Joseph W. Hickman, of Benton, for appellant.

Mitchell & Armstrong, of Marion, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Bonita Snider appeals from a judgment of the trial court of Jackson County finding that the plaintiff-appellee administrator of the estate of Colbert L. Snider was entitled to the proceeds of a group life insurance policy payable on the death of Colbert L. Snider.

This case concerns a dispute between the administrator of the estate of Colbert L. Snider, deceased, and Bonita Snider, the divorced wife of the decedent, over the proceeds of a group policy in the amount of $20,000 on the life of Colbert L. Snider.

Colbert L. Snider, an employee of E. T. Simonds Construction Com-

pany, was insured under a contributory group insurance policy with Employers Life Insurance Company of Wausau at the time of his death. He and the appellant were married in 1950 and entered into a property settlement agreement on August 14, 1972.

On August 16, 1972, a decree of divorce incorporating the property settlement was granted to Bonita Snider. Neither the decree nor the property settlement made any mention of insurance. Colbert L. Snider died the next day after the divorce was granted, as a result of an accident.

The administrator of the estate of Colbert L. Snider filed a suit in the circuit court of Jackson County claiming that she was entitled to the proceeds of the group policy by reason of the death of Colbert L. Snider. Defendant Bonita Snider filed an answer claiming the proceeds, and the Employers Life Insurance Company of Wausau tendered the proceeds of the policy in question into the court with the request that the court determine which party was entitled to the money.

The plaintiff contended in the trial court that she was entitled to the money because (1) Bonita Snider was not a designated beneficiary under the terms of the group policy at the time of the death of Colbert L. Snider, and (2) assuming that she was, her interest was abolished by the property settlement incorporated into the divorce decree.

The trial court in holding in favor of the plaintiff stated:

"Assuming *arguendo* (but not necessarily so specifically holding) that Mrs. Snider was the designated beneficiary of the policy in question, the crucial question in this litigation is whether the divorce decree barred her right to receive the proceeds of the said insurance policy upon his death, in light of the language of said Paragraph 9 of the Divorce Decree.

Although there are no Illinois authorities directly in point and the ruling in this cause may be one of first impression, this court feels that sound reasoning, logic and equity require the answer to the question in the affirmative.

The decided weight of authority in the case law of foreign jurisdictions, as set out in the texts and treatises, such as A.L.R., American Jurisprudence and others, support the principal of law, under the individual circumstances and facts of the case at hand, that the rights of the beneficiary to the proceeds of an insurance policy upon the life of a divorced spouse can be terminated by agreement to relinquish the spouse's right to the proceeds without formally changing the beneficiary by giving notice to the insurance company or its agents of such change. The real question is whether the Divorce Decree barred the defendant's right to receive the proceeds of the insurance policy and this court feels that the

answer to this question is that the Decree did so bar her rights to the same."

The critical questions for review are: (1) Was Bonita Snider the designated beneficiary of the policy in question? We hold that she was. (2) Did the divorce decree bar Bonita Snider's right to receive the proceeds of the policy? We hold that it did not.

OPINION

*Question No. 1:*

■■ Guidance for the answer to this question can be found in the principle stated in 46 C.J.S. *Insurance* § 1186, at page 98 (1946):

"The designation and description of the beneficiary in the policy are liberally construed in his favor, and, where it is not clear from the policy exactly what person has been designated as beneficiary, the intention of insured is controlling, *and in cases of doubt the question will be determined on the basis of all the surrounding circumstances.*" (Emphasis added.)

Cases in various jurisdictions have recognized this principle. For example, in *Walker v. General American Life Insurance Co.*, 141 S.W.2d 785 (Mo. 1940), the Missouri Supreme Court said at 787:

"The rule is that: 'In determining who is the beneficiary under the terms of a policy of life insurance, the courts are governed by the intention of the parties, or at least the intention of insured, as indicated by the surrounding circumstances and conditions at the time the contract was made as applied to the language of the instrument.' "

And in reference to a group policy, the court in *Butcher v. Pollard,* 32 Ohio App.2d 1, 288 N.E.2d 204 (1972), said (288 N.E.2d 204, 206):

"The designation of a group life insurance beneficiary is solely a decision of the insured and normally he will name a specific individual or a class of individuals. Whenever a dispute develops over the connotation of the named beneficiary, the court's responsibility is to ascertain and give effect to his intentions. And, although intention is an intangible commodity, it may nevertheless be gathered indirectly through the insured's chosen words and any relevant circumstances prior to and contemporaneous with his decision."

In Illinois this principle has been specifically recognized where the insured and the insurer are the contracting parties. (*New York Life Insurance Co. v. Rak,* 24 Ill.2d 128, 180 N.E.2d 470 (1962).) No Illinois cases have been found by this court or cited in the briefs dealing with a situation involving a group insurance policy. However, the Ohio court in

*Butcher* alludes to *Rak* as authority for its statement on group policy beneficiaries. We agree with the rationale of *Butcher* and hold that Illinois courts should also extend the principle of *Rak* to group policy cases, as did the Ohio court. Thus, in the instant case the intention of Colbert Snider at the time the contract of insurance involving the policy in question was entered should govern the question of whether Bonita Snider was a designated beneficiary. This should be true, at least if there is no formal requirement of the policy itself which would prevent such intention from governing.

With this principle in mind, we examine this question. The most important items to examine in solving this problem are: (a) the employee enrollment card kept with the employer-policyholder, which named Bonita Snider beneficiary; (b) the provisions of the insurance policy in question pertaining to the designation or change of designation of beneficiary; and (c) the designation of Bonita Snider as beneficiary on two previous group insurance policies.

Clearly, from the circumstances existing at the time the employer-policyholder entered the contract of insurance with Employers Life Insurance Company of Wausau, Colbert Snider intended Bonita Snider to be the designated beneficiary. Not only had the employee enrollment card been completed in writing, though admittedly without the signature of Colbert Snider, but also Colbert Snider had received copies of two previous group insurance policies entered into by the same employer, each of which listed Bonita Snider on its face as beneficiary of the policy. Surely, had Colbert Snider not directed the employer to designate Bonita Snider as beneficiary on the employee enrollment card, he would have objected to the designation of Bonita Snider as beneficiary on these two previous policies and would have directed the employer to delete her name from the employee enrollment card and list another beneficiary. Therefore, it is apparent that the employee enrollment card was completed at the direction of Colbert Snider.

Realizing that it was the intention of Colbert Snider to designate Bonita Snider as beneficiary at the time the employer-policyholder entered the insurance contract with Employers Life Insurance Company of Wausau, it remains only to determine whether anything will prevent this court from carrying out that intention. The requirements for properly designating a beneficiary under the policy in question are listed on the third page of the policy:

> "An employee may designate a beneficiary, or change his designation of beneficiary, from time to time by written request filed through the policyholder. Such designation or change shall take

effect, provided it has been received by the policyholder, as of the date of execution of such request * * *."

Clearly, from this statement there are two essential requirements for proper designation: (1) That the designation be in writing, and (2) that the designation be filed "through the policyholder." There is no specific requirement that the writing be signed by the insured, nor is there a requirement that the insurer acknowledge or approve the designation of beneficiary. The absence of the latter of these is an indication that the insurer left the bookkeeping function of recording designated beneficiaries to the employer-policyholder. Such is also indicated by the absence of a space for designation of beneficiary on the policy in question or on any of the supplementary pages which are part of the policy in question. Thus, the requirement that the designation be in writing was accomplished when the name of Bonita Snider was typed into the space of the employee enrollment card for designating the beneficiary.

Not only is it clear from the wording of the policy itself that there was no requirement of the insured's signature, the absence of such a requirement is also apparent from the employee enrollment card. An examination of the card shows that the space for "Employee's Signature" appeared on the card only in order to allow the employer to make payroll deductions. Immediately above the space for the "Employee's Signature" appears the sentence:

"I hereby authorize my employer to deduct from my wages the amount required to cover my contribution for group insurance for which I am or may become eligible. It is understood that my employer shall continue the required deduction as long as I remain insured."

If the signature were intended to be a form of verification for all that appears on the card, a different sentence would have been used, such as "I hereby affirm that all of the above is true and as I intend it."

Concededly, the policy in question was that of Employers Life Insurance Company of Wausau, whereas the card was that of Employers Mutual Liability Insurance Company of Wisconsin. Nevertheless, as stated on the policy in question, Employers Life Insurance Company of Wausau is owned by Employers Mutual Liability Insurance Company of Wisconsin and could be charged with knowledge of the format of such Employee Enrollment Cards as had previously been issued by the owner (parent) company. If, therefore, Employers Life Insurance Company of Wausau wished for the policyholder to require a signature of the insured for designation of beneficiary on the card, it would have issued

cards with a different format or it would have specifically stated in the policy in question that a signature was required.

▪▪ Regarding the requirement of filing "through the policyholder," it is clear that the name of Bonita Snider had been filed "through the policyholder," as this is the name which appeared on the previous policy issued by the owner (parent) company. Moreover, since there was no mention in the policy in question that acknowledgement or approval of designated beneficiaries by the insurer was required, as is the case in many other such policies, designation of the beneficiary on the Employee Enrollment Card alone was a sufficient filing "through the policy." Thus, it is clear that Colbert Snider did, in fact, designate Bonita Snider as beneficiary under the policy in question.

*Question No. 2:*

Precisely the same issue as that presented by this question was decided by the Appellate Court for the Third District of Illinois in *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill.App.3d 995, 299 N.E.2d 392 (1973), a case where the decedent-insured had designated his wife as beneficiary of two group insurance policies. Subsequent to the designation, the wife was granted a divorce from the insured. Incorporated in the divorce decree was a property settlement agreement disposing of various items of real and personal property. The property settlement agreement made no mention of the insurance policies or proceeds, but it did contain a general clause stating that "each party is further barred as to any and all claims of interests whatsoever in and to the property of the other now owned and hereafter acquired." Two months after the divorce decree was entered, the husband-insured died intestate, never having made a change of beneficiary of the insurance policies. The administrator of the estate filed a petition to have the insurance proceeds paid to the estate, based on the separation agreement. The ex-wife, of course, objected and sought to have the proceeds paid to her as the designated beneficiary. The lower court awarded the proceeds to the ex-wife, and the administrator appealed.

▪▪ The administrator argued on appeal that despite the fact that the decedent had not attempted to change the designated beneficiary of the policies, the property settlement agreement effected such a change because insurance proceeds payable under a contractual agreement constituted property and, thus, came within the general clause of the property settlement agreement mentioned above. The court rejected this argument, saying:

> "In *Equitable Life Assurance Society v. Stilley*, 271 Ill.App. 283, it is stated that, when the insured reserves a right to change a beneficiary, the beneficiary has a mere expectancy during the insured's lifetime. This expectancy would not be considered prop-

erty and would not be included in a contract between the parties for division of property rights unless specifically included or so intended by the language of the agreement. In the instant case, the parties agree the language of the property agreement is general and there is no specific provision regarding insurance.

Illinois follows the majority rule that a decree of divorce in no way affects the rights of the divorced wife as a beneficiary in a husband's life insurance policy. (See, 22 I.L.P. Insurance, sec. 93 and 44 Am.Jur.2d Insurance, sec. 1740.) Only if a property settlement agreement should specifically include a termination of the beneficiary's interest, will the right to the proceeds of a policy on the life of the husband be affected, unless the policy itself or a statute provides otherwise. (Couch on Insurance 2d ed., sec. 27: 111.) We find no provision regarding insurance in the property settlement agreement nor is there a provision in the policy or a statute which terminates a spouse's interest as beneficiary upon divorce. Nor is there any indication of an intention of the insured to make a change. Surely, if the insured had wished to substitute another person or his estate as beneficiary following the divorce, he would have at least attempted to effect a change with the insurer or included a provision in the property settlement agreement * * *." 12 Ill.App.3d 995, 997-998.

Comparing the property settlement agreement of Colbert and Bonita Snider to that in *O'Toole*, it is clear that they are, for all practical purposes, identical. They both speak generally of property, and neither specifically named the insurance policies.

■■■ The rationale of *O'Toole* is consistent with the opinion of the First District Court in *Suga v. Suga*, 35 Ill.App.2d 355, 182 N.E.2d 922 (1962), where that court held that when an insurance policy regulates the method for changing the beneficiary, the method specified is generally exclusive, and, therefore, the benficiary could not be changed by will. In the instant case, the policy provided that, to effect a change of beneficiary, the insured was required to file a written request through the policyholder. The property settlement agreement in this case in no way complies with this requirement and, therefore, would be ineffective to change the beneficiary of the insurance policy as was the will in *Suga*.

For the foregoing reasons the judgment of the circuit court of Jackson County is reversed, and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

CARTER and CREBS, JJ., concur.