## FOX VALLEY AND VICINITY CONSTRUCTION WORKERS PENSION FUND, Plaintiff,

v.

## Laurine BROWN (La Mar), Dessie Brown, and all unknown claimants, Defendants.

### No. 87 C 8095.

United States District Court, N.D. Illinois, E.D.

April 4, 1988.

---

Bernard M. Baum, Baum & Sigman, Chicago, Ill., for plaintiff.

Gerald L. Morell, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, Ill., Roy Hasseltine, Harris & Hasseltine, Florence, Ala., Nicholas F. Esposito, Esposito & Heuel, Chicago, Ill., for defendants.

Dessie Brown, pro se.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This interpleader action comes before us on defendant Laurine Brown's [1] motion for summary judgment. We deny Laurine's motion. We find on the record before us that the $5,821.64 in question belongs to defendant Dessie Brown. However, we reserve entry of judgment pending further submissions by the parties.

### FACTS

There are no disputed facts in this case. James Brown ("James") was covered by the Fox Valley and Vicinity Construction Workers Pension Fund ("Fund"). Plaintiff's Complaint at ¶ 3. The Fund administered the Fox Valley and Vicinity Construction Workers Pension Plan ("Plan"). Complaint at Exhibit 1. The Plan offers several forms of pension benefits to participants, including a Lump Sum Death Benefit ("LSDB"). *Id.* If a participant dies before retirement age, the Plan calls for payment of an LSDB to the participant's designated beneficiary. *Id.* The LSDB represents a percentage of the employer's contributions to the Plan on behalf of the participant.

The Plan contains a special provision describing how a participant may designate a beneficiary:

The Participant's Beneficiary shall be the person or persons he so designates in the last written notice received in the Administrative Office prior to the Participant's death. It shall be the responsibility of the Participant to notify in writing the

---

1. Ms. Brown is now Ms. LaMar. We will refer to her as Laurine in this opinion.

Administrative Office of his choice of Beneficiary or any change in Beneficiary. A Participant may, without the consent of his designated Beneficiary or Beneficiaries, change his Beneficiaries. In the event that Participant shall fail to name a Beneficiary, or if such Beneficiary shall not be living at the time of the Participant's death, such benefits shall be paid to:

(a) his legal spouse, if living;

(b) If no spouse be living, then to his living children in equal shares;

(c) if no spouse or children be living, then to his parents in equal shares, or to the survivor of such parents if only one (1) be living;

(d) if no spouse, children, or parents be living, then to his living brothers and sisters in equal shares;

(e) if no spouse, children, parents, or brothers and sisters be living, then to the estate of such deceased Participant.

*Id.*

On April 14, 1982, James married Laurine, a resident of Illinois. *Id.* at ¶ 7; Affidavit of Lauriane at ¶ 2. On or about March 10, 1986, James executed the Fund's "Beneficiary Designation Form," naming Laurine as his beneficiary. Complaint at ¶ 8. On September 29, 1986, James and Laurine were divorced. *Id.* at ¶ 9. They entered into a court-approved marital property settlement agreement which provided in pertinent part:

The parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.

*Id.* at Exhibit 5.

Despite their divorce, James resided with Laurine for several long periods in 1986 and 1987. Affidavit of Laurine at ¶¶ 11, 12. On June 17, 1987, James died. Plaintiff's Complaint at Exhibit 2. Under the Plan, James's beneficiary should receive an LSDB of $5,821.64. *Id.* at ¶ 16. If Laurine is not James's "designated beneficiary," the terms of the Plan direct payment of the LSDB to Ms. Dessie Brown ("Dessie"), as James's sole surviving parent. Affidavit of Dessie. Dessie resides in Alabama. Answer of Dessie; Cross–Claim of Dessie. Uncertain as to Laurine's status as "designated beneficiary" subsequent to her divorce from James, the Fund brought this interpleader action. 28 U.S.C. § 1335.[2] The Fund has placed $5,821.64 in an interest-bearing escrow account with this court. Order of October 23, 1987.

On October 21, 1987, Laurine moved for summary judgment. She submitted a supporting affidavit in which she states that James was unrepresented at their divorce proceeding and did not read the terms of their marital property settlement agreement which was prepared by her lawyer. Affidavit of Laurine at ¶ 10. She also asserts that, on several occasions after their divorce, James told her to contact a union official who "would see" that she and her daughter "would be taken care of in the event that anything happened" to him. *Id.* at ¶ 12. In Laurine's words, "[a]t all times when the matter was discussed both before and after the divorce it was the expressed intention of James that I [Laurine] receive whatever benefit there might be from his insurance or pension plan." *Id.*

We note that the parties have not addressed in their memorandum whether James's statements to Laurine constituted binding promises. The parties argue only over whether these statements reflect James's intention that Laurine receive the LSDB. Moreover, the parties' affidavits do not clarify the precise relationship between Laurine's daughter and James.

## DISCUSSION

■ This motion for summary judgment presents an issue of first impression under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"): whether a divorced wife, designated as an

**2.** We note that we may also have federal question jurisdiction under ERISA, 29 U.S.C. § 1132(a)(3). However, because there is minimal diversity between the claimants, and more than $500.00 in controversy, we have proper jurisdiction for this statutory interpleader action. 28 U.S.C. § 1335.

LSDB beneficiary according to the terms of a pension plan before a divorce, may receive an LSDB despite a divorce settlement agreement containing a mutual waiver of the parties' rights to each other's pension benefits.

A preliminary question is what law governs Laurine and Dessie's rights to the LSDB. ERISA regulates pension programs such as the Plan and preempts state pension benefit law. 29 U.S.C. § 1144(a). *See Mutual Life Insurance Company of New York v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988). Therefore, we must apply ERISA or the body of federal common law which has developed around it. *Soft Drink Industry Local Union No. 744 Pension Fund v. Coca–Cola Bottling Co. of Chicago*, 679 F.Supp. 743, 748–51 (N.D.Ill.1988) (Grady, C.J.). Unfortunately, neither the text of ERISA nor existing federal common law provides a clear answer to the issue raised here. Accordingly, we must determine for ourselves the proper federal common law principles which govern this case.

In fashioning federal common law, we may look for guidance to state law. *United States v. Best*, 573 F.2d 1095, 1102 (9th Cir.1978). The parties have pointed us to a closely analogous area of state law involving a former spouse's right to recover life insurance benefits. The rule in Illinois and a majority of jurisdictions is that a

> decree of divorce in no way affects the rights of the divorced wife as a beneficiary in a husband's life insurance policy. Only if a property settlement agreement should specifically include a termination of the beneficiary's interest, will the right to the proceeds of a policy on the life of the husband be affected, unless the policy itself or a statute provides otherwise.

*O'Toole v. Central Laborers Pension and Welfare Funds*, 12 Ill.App.3d 995, 299 N.E. 2d 392, 394 (3d Dist.1973); *see also* Appelman, *Insurance Law and Practice* § 804 (1966); *Couch on Insurance 2d* § 27:112 (1984). Applying this rule to the case at hand, Laurine could not recover James's LSDB because their marital property settlement contained a specific waiver as to

pension benefits. Moreover, no statute or clause in the Plan governs the effect of divorce decrees upon Plan benefits.

In her memorandum, Laurine relies upon the last clause of the above-quoted *O'Toole* passage. She argues that the Plan "itself ... provides otherwise" because, under its terms, the "[b]eneficiary *shall be* the person or persons [the participant] designates in the last written notice received" by the Fund. Plaintiff's Complaint at Exhibit 1 (emphasis added). Laurine misinterprets *O'Toole*. In the proviso cited by Laurine, the *O'Toole* court was referring to a provision in a policy which preserves or "terminates a spouse's interest upon divorce," 299 N.E.2d at 394, not one which establishes general procedures for designating a beneficiary.

Furthermore, Laurine cites *Cox v. Employers Life Insurance Company of Wausau*, 25 Ill.App.3d 12, 322 N.E.2d 555 (5th Dist.1975) and *Suga v. Suga*, 35 Ill.App.2d 355, 182 N.E.2d 922 (1st Dist.1962), for the proposition that "when an insurance policy regulates the method for changing the beneficiary, the method specified is generally exclusive." *O'Toole*, 322 N.E.2d at 560. She argues that the Browns' property settlement did not comply with the Plan's exclusive method for changing beneficiaries, which required James to file a new "Designation of Beneficiary" form.

Laurine's argument is not persuasive. First, *Suga* concerned the effect of a revocable will, not a marital property settlement, upon the designation of a beneficiary in a life insurance policy. 182 N.E.2d at 924. Second, in *Cox*, the court relied on *O'Toole* and held that a former wife could receive life insurance benefits as a "designated beneficiary" even though, subsequent to her designation, she and her husband divorced and executed a marital property settlement which did not specifically address the insurance policy. *O'Toole*, 322 N.E.2d at 560. The *Cox* holding is thus consistent with the *O'Toole* rule requiring a marital property settlement to contain a specific waiver of policy rights in order to extinguish a former spouse's interest.

However, as Laurine points out, the *Cox* court inexplicably discussed the *Suga* case:

> The rationale of *O'Toole* is consistent with the opinion of the First District Court in *Suga v. Suga*, 35 Ill.App.2d 355, 182 N.E.2d 922 (1962), where that court held that when an insurance policy regulates the method for changing the beneficiary, the method specified is generally exclusive, and therefore, the beneficiary could not be changed by will. In the instant case, the policy provided that, to effect a change of beneficiary, the insured was required to file a written request through the policyholder. The property settlement agreement in this case in no way complies with this requirement and, therefore, would be ineffective to change the beneficiary of the insurance policy as was the will in *Suga*.

*Id.* We do not agree with the *Cox* court's dictum. If this dictum were the proper rule, a waiver of life insurance rights in a marital property settlement, no matter how specific, could never extinguish a former spouse's designation as beneficiary under any insurance policy which requires, as most do, that the participant notify the plan in writing of any change. We do not believe that the *Cox* court's dictum was intended to effectively negate the general rule that a marital property settlement containing a specific waiver of life insurance rights terminates a former spouse's interest as the designated beneficiary of a life insurance contract.

In addition to examining analogous state common law decisions, we also consider whether a contemplated federal common law principle promotes the relevant federal interest in the case. The Supreme Court has noted that "the ultimate statement of [that federal interest] is derived from a federal statute." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427, 84 S.Ct. 923, 939–40, 11 L.Ed.2d 804 (1963). Obviously, ERISA does not expressly govern the situation presented by this case. However, ERISA does address the effect of a divorce settlement agreement upon pension rights in a somewhat different context.

If a former spouse seeks to recover a living participant's pension benefits pursuant to a marital property decree, ERISA will often prevent that recovery. The general rule is that ERISA's prohibition against the alienation or assignment of pension benefits supersedes any domestic relations order. 29 U.S.C. § 1056(d)(1), (d)(3)(A). However, ERISA provides an exception if the marital property decree is a qualified domestic relations order ("QDRO"). The statute sets forth several requirements for establishing QDRO status. *See* 29 U.S.C. § 1056(d)(3)(A)–(F). Essentially, a QDRO must specifically identify an "alternate payee" (normally the former spouse) and detail the extent of his or her interest in the participant's pension benefits. *Id.*

We acknowledge that the rationale underlying both this general rule denying effect to marital property decrees and the QDRO exception does not apply with full force to this case. Undoubtedly, ERISA's prohibition against the alienation and assignment of pension benefits was designed primarily to protect spendthrift pension plan participants and their dependents. Nevertheless, ERISA does seem to favor the QDRO as the proper method to preserve a former spouse's interest in pension benefits. In rejecting Laurine's attempt to recover James's LSDB, we remain consistent with this ERISA policy. If the Browns had wished to reserve Laurine's interest in James's pension benefits, they could have executed a QDRO establishing her right to James's LSDB. They did not do so. In fact, they executed a document providing for just the opposite—that Laurine would have no interest in James's pension benefits. Therefore, our adoption in this case of the state common law rule which would deny James's LSDB to Laurine is consistent with the general ERISA policy favoring the QDRO as the proper method to preserve a former spouse's interest in pension benefits.[3]

---

**3.** We do not decide today whether a former spouse can recover an LSDB *only if* the parties' rights are governed by a QDRO.

For all these reasons, we adopt the majority rule regarding a former spouse's right to life insurance benefits as the federal common law for pension benefits. We hold that a marital property settlement will affect the beneficiary designation for an LSDB under an ERISA plan when the settlement contains specific terms regarding pension benefits. Here, James and Laurine's marital property settlement contained an explicit mutual waiver of all pension rights. Therefore, the Browns' marital property settlement extinguishes Laurine's claim to James's LSDB.[4]

If Laurine cannot receive James's LSDB, the Plan provides a mechanism for determining the proper beneficiary in the absence of a qualified designated beneficiary. On the basis of the affidavits before us, James had no living spouse or children and only one living parent. Affidavit of Dessie. Pursuant to the terms of the Plan, Dessie should therefore receive James's LSDB.

Though it appears that James's LSDB belongs to Dessie, we will delay entry of judgment. As noted above, the exact nature of James's alleged promises to Laurine subsequent to their divorce but prior to his death is unclear. The parties have not addressed whether James made a binding promise to direct his LSDB to Laurine subsequent to the marital property settlement and, if so, whether such a promise would affect our decision. Moreover, it is not clear whether Laurine's daughter has any interest in James's LSDB.[5] Laurine is granted leave to file a brief addressing these issues, with supplementary affidavits, by April 22, 1988. Dessie and the Plan may respond by May 13, 1988. Laurine has until May 27, 1988 to file a reply.

## CONCLUSION

We deny the motion of defendant Laurine Brown for summary judgment. We find on the record before us that the $5,821.64 in question belongs to defendant Dessie Brown, but reserve entry of judgment pending further submissions by the parties.

---

4. We note that the Plan is a stakeholder here and has not paid out pursuant to the beneficiary designation it had on file. We are not faced with the question of whether the Plan could be liable for paying out pursuant to a beneficiary designation which is in conflict with a waiver in a settlement agreement.

5. Based on the affidavits before us, we do not know whether James was the natural or adoptive father of Laurine's daughter. We assume that he was not the natural or adoptive father. However, we direct Laurine to submit affidavits or documentation establishing James's relation to her daughter.