MURNAGHAN, Circuit Judge,
concurring:
I agree that the proper result is that Betty Pettit is not entitled to any of the life insurance proceeds from the ERISA welfare plan and that she cannot succeed in establishing a state law constructive trust claim. Under the amendments to ERISA in the Retirement Equity Act of 1984, Pub.L. No. 98-397, 98 Stat. 1426 (1984), ERISA’s preemption provision does preempt Betty’s state law constructive trust claim because it is based on a state law domestic i-elations order that is not a Qualified Domestic Relations Order (QDRO), 29 U.S.C.A. §§ 1144(a), 1144(b)(7) (West 1985 & Supp.1998).
However, in my view ERISA does not require a divorce order to be a QDRO for it to alienate or assign ERISA welfare plan benefits. While state law (including a state law divorce order that is not a QDRO) is preempted, that means only that the legal question raised is governed by federal law. So, with respect to Betty’s claim against the welfare plan here, it would be barred by ERISA as against any state law claim. Yet Betty might rely, not on a state law claim, but on any applicable provisions of the ERISA statute itself or on federal common law where ERISA is silent. See Phoenix Mutual Life Ins. Co. v. Adams, 30 F.3d 554, 563 (4th Cir.1994) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)); Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir.1992). In such a case, if the ERISA statute or federal common law provided her a route to follow, Betty would not be barred by her failure to obtain a QDRO. Consequently, noting that we deal with a welfare plan here, I do not accept the statement by the Court that the lack of a QDRO would cause Betty’s failure whatever route she might take. See 29 U.S.C.A. § 1056(d)(1) (West Supp.1998) (ERISA’s anti-alienation provision applies only to pension plans, not welfare plans). Cf, e.g., Estate of Altobelli v. International Business Machines Corp., 77 F.3d 78 (4th Cir.1996) (allowing the contents of an apparently pre-empted state divorce order and its underlying property settlement agreement to determine an issue under federal common law); Fox Valley & Vicinity Const. Workers Pension Fund v. Brown, 897 F.2d 275 (7th Cir.1990) (en banc) (same; court stated explicitly that state law on the *867 issue was pre-empted under 29 U.S.C. § 1144(a)).
But having a method by which Betty could yet proceed to recover from the welfare plan despite the absence of a QDRO, she premised her claim exclusively upon state law, and that state law claim is pre-empted by ERISA.
Hence, I concur in the result reached by the majority. Yet I wish to preserve, in case a similar issue should arise again, the argument that a QDRO is not necessary to pursue successfully a welfare plan by a federal approach, either under ERISA or, in its silence, under the federal common law.*

 Separately, I note that I do not accept the majority's statement that a QDRO must be filed with a plan administrator, if by that statement the majority means that a divorce order that meets all of the requirements of 29 U.S.C.A. §§ 1056(d)(3)(B) — (E) is ineffective unless formally "filed” with the plan administrator. I am not familiar with any section of ERISA or any case law that imposes a formal filing requirement. Section 1056(d)(3)(G) indicates that a plan administrator must eventually receive the QDRO. If a QDRO is effective merely upon the plan administrator’s eventual receipt of the QDRO (and before payment), then the notice and predictability benefit of a QDRO over other domestic relations orders as proposed by the majority evaporates. Cf. Fox Valley, supra, 897 F.2d at 282 (noting duty of plan administrators to investigate marital history and existence of any domestic "relations orders; implying a QDRO is effective "when it becomes known to the Fund before payment").