**Judith A. VON HADEN, Appellant–Defendant,**

v.

**SUPERVISED ESTATE OF Howard C. VON HADEN, et al., Appellee–Defendant.**

No. 52A02–9712–CV–876.

Court of Appeals of Indiana.

Aug. 12, 1998.

David J. Magley, Wabash, for Appellant–Defendant.

Robert A. Spahr, Peru, for Appellee–Defendant.

## OPINION

MATTINGLY, Judge.

Judith Von Haden (Judith) appeals a grant of summary judgment in favor of the estate of her former husband, Howard·Von Haden (the Estate). Judith raises a single issue, which we restate as follows: when the parties' marital dissolution property settlement equally divides a 401K plan savings account and the husband does not replace his ex-wife as beneficiary, how are the proceeds of that account to be divided upon the husband's death?

We affirm.

### FACTS

Howard Von Haden (Howard) and Judith were married in 1967 and divorced on January 10, 1995. When Howard was employed by United Technologies Automotive (UTA),

he established and funded a "UTA Savings Plan Account" (Plan). This Plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Retirement Equity Act of 1984 (REACT), 29 U.S.C. §§ 1000–1461. The parties' property settlement agreement distributed the Plan benefits, providing that each party would receive as his or her sole and separate property one-half of the non-taxable amount and one-half of the remaining taxable amount, and that each party would be responsible for one-half of the tax liability.

When Howard died on April 14, 1995, Judith was the named beneficiary of Howard's half of the account. In September of 1995, the account administrator issued the entire account balance to Judith. The Estate claimed a one-half interest in the account pursuant to the property settlement agreement and brought an action against Judith demanding that she surrender Howard's one-half interest in the account. After both parties moved for summary judgment, the trial court granted summary judgment in favor of the Estate, finding:

1. The property settlement agreement in the dissolution of marriage between the decedent and the defendant vested ownership of one-half of the UTA Savings Plan Account in the decedent and one-half of the account in the Defendant.

2. The fact that a Qualified Domestic Relations Order had not yet been filed by either party does not change the ownership interests each party had in the account.

3. While there is no specific waiver language in the decree of dissolution, the Defendant should be deemed to have waived any interest she may have in decedent's one-half interest in the account in question.

4. The fact that Decedent had not changed the beneficiary in the account in question at the time of his death does not alter the award of one-half interest in that account to the Decedent and consequently to his heirs at law.

5. The Defendant is not an heir at law of the Decedent.

6. The Court finds that as a matter of law the Estate of Howard C. Von Haden is entitled to one-half of the UTA Savings Account, that being the property awarded to the Decedent in the dissolution decree dated January 10, 1995.

7. Judith A. Von Haden, the Defendant herein, should turn over to the Decedent's estate one-half of the proceeds of the UTA Savings Account that were previously distributed to her in addition to one-half of the interest earned on those proceeds from the time they were received.

R. at 82–83.

### STANDARD OF REVIEW

 Our standard of review of the grant of a summary judgment motion is the same as that applied in the trial court; summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). The appellant bears the burden to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995).

 The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind. Ct.App.1996).

### DISCUSSION AND DECISION

To determine the proper distribution of the Plan's assets, it is necessary to examine ERISA provisions. Through ERISA, Congress established a detailed federal framework for the regulation of pension and welfare benefit plans. *Bennett v. Indiana Life and Health Ins. Guar. Ass'n*, 688 N.E.2d 171, 179 (Ind.Ct.App.1997). ERISA super-

sedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a). The term "State laws" includes all "laws, decisions, rules, regulations, or other State actions having the effect of law, of any State." *Id.* § 1144(c)(1).

ERISA provides that alienation or assignment of benefits is generally prohibited under a pension plan. *Id.* § 1056(d)(1). This anti-alienation provision is to prevent the plan participant from unwisely alienating or assigning his interest in the plan. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 278 (7th Cir. 1990), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). In other words, a plan participant is prohibited from assigning his or her benefits in an ERISA plan, unless certain formalities are completed. Since these anti-alienation provisions were causing difficulties in domestic relations settings, especially where ERISA-governed pensions had to be divided, amendments to ERISA in 1984 created a limited exception for a state domestic relations order if it is a "qualified domestic relations order" (QDRO). *Id.* at 279; 29 U.S.C. § 1056(d)(3)(A). A QDRO allowed a plan participant to assign part of a pension plan in a divorce settlement.

■ To qualify as a QDRO, a domestic relations order must state: (1) the name and last known mailing address of the participant and alternate payee; (2) the amount or percentage of the participant's benefits to be paid to the alternate payee or the manner in which the amount or percentage is to be determined; (3) the number of payments or period to which the order applies; and (4) each plan to which the order applies. *Hawkins v. Commissioner of Internal Revenue,* 86 F.3d 982, 991 (10th Cir.1996). Since the Von Haden settlement agreement does not contain language regarding the number of payments or the time frame during which Judith could acquire her half of the Plan, it is not a QDRO.

■ Not being a QDRO, the settlement agreement did not allow Howard to assign any of his interest in the Plan. However, the anti-alienation provisions of ERISA do not preclude the waiver by a designated benefi-

ciary of a right to the payment of benefits. *Fox Valley,* 897 F.2d at 279. ERISA allows beneficiaries to waive their interests in benefits, *id.,* and a proper waiver of interest by a nonparticipant in a plan is not preempted by ERISA's anti-alienation provisions. *Id.* at 280.

■ Since a beneficiary/nonparticipant can waive his or her interest in a spouse's retirement/pension plan, we next address whether Judith did waive her interest. We believe the settlement agreement effected a valid waiver. In *Fox Valley,* the husband, who was the plan participant, designated his wife as beneficiary. Later that same year, the two divorced. Their property settlement agreement provided that each "waive[d] any interest or claim in and to any ... pension ... plans resulting from the employment of the other party." *Id.* at 277. About ten months later the husband died, having never changed his designated beneficiary after the divorce. The district court determined that the waiver was valid, and held that even though she was the designated beneficiary at her husband's death, the wife had waived her right to any portion of the husband's death benefit. The Seventh Circuit Court of Appeals affirmed.

■ Since ERISA governs the Plan, and as ERISA is silent as to what constitutes a proper waiver, we may examine state law to guide us in our analysis. *Id.* at 280. Indiana law provides that in order for a waiver of interest to be valid, the waiver must be made knowingly, voluntarily and intelligently. *Ryan v. Ryan,* 659 N.E.2d 1088, 1095 (Ind.Ct.App.1995). There are two relevant paragraphs in the Von Haden property settlement agreement:

> The parties' UTA Savings Plan shall be divided as follows: The Petitioner and Respondent shall each receive as their sole and separate property one half (½) of the non-taxable amount and one-half (½) of the remaining taxable amount. Each party shall be responsible for one-half (½) of the tax liability.

R. at 28.

> *Mutual Releases.* In consideration of all of the promises contained in this agree-

ment, Petitioner and Respondent hereby release all claims and right which either ever had, now has, or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement. It is the intent hereof that each party accepts the provisions of this agreement in full release and settlement of any and all claims and rights against the other. It is the further agreement of the parties that the provisions of this agreement shall inure to the benefit of, and be binding upon, the heirs, executors, administrators, and personal representatives of the parties.

R. at 31.

 Upon dissolution, the parties to a marriage have "free rein to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish." *Gabriel v. Gabriel,* 654 N.E.2d 894, 897 (Ind. Ct.App.1995) (quoting *Hull v. Hull,* 436 N.E.2d 841, 843 (Ind.Ct.App.1982)). The dissolution court should accept such an agreement unless the record demonstrates some unfairness, unreasonableness, or manifest inequity in the agreement, or that the execution of the agreement was procured through fraud, misrepresentation, duress, coercion, or lack of full disclosure. *Id.* at 897. The record before us does not reveal any such defects in the agreement, nor do the parties assert any. We favor upholding marital property settlement agreements, and we believe the trial court properly accepted this one.

Judith argues that the Plan should be treated similarly to a life insurance policy, pursuant to *Graves v. Summit Bank,* 541 N.E.2d 974, 977–78 (Ind.Ct.App.1989). There, we noted the well settled rule that neither a divorce decree nor a modification of a will has the effect of changing the beneficiary named in a life insurance policy, and we determined that the same rule should apply to the beneficiary of an individual retirement account. *Id.* at 977.

In *Graves,* the husband established an IRA and named his wife as beneficiary. When the parties divorced, the IRA was awarded to the husband. After the divorce, the husband changed his will to remove all bequests to his former wife; however, he did not change the beneficiary of the IRA. After the husband died, the former wife filed suit to recover the IRA funds from the estate. The trial court granted summary judgment for the estate, but we reversed. Following the same reasoning, Judith argues that because she was the named beneficiary of Howard's half of the IRA when Howard died, she, and not Howard's estate, is entitled to Howard's half of the IRA.

We do not agree. First, our *Graves* decision did not consider the preemption of state law by ERISA, and Judith's argument does not address the effect of that distinction where, as here, an ERISA-governed plan is involved. Second, *Graves* did not involve a situation where a life insurance policy beneficiary has entered into a separate agreement to accept only part of the policy proceeds. Here, through the property settlement agreement, Judith clearly indicated her agreement to accept half of the Plan proceeds. This type of explicit agreement to accept only a part of the proceeds is not present in the Indiana cases involving the distribution of life insurance benefits. *E.g., Wolf v. Wolf,* 147 Ind.App. 240, 241, 259 N.E.2d 93, 93 (1970). Third, we do not believe that *Graves* supports Judith's argument that the divorce degree did not give her a property right in the IRA, only a revocable interest. Her argument overlooks the fact that when the marital pot was divided, the parties and the court considered the cash value of the IRA at the time of separation, not the value of a revocable expectancy.

In light of the explicit language of the property settlement agreement releasing "all claims and right which [Judith] ever had, now has, or might hereafter have, against [Howard] by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement," we cannot say the trial court erred as a matter of law when it found that such language was broad enough to encompass a

waiver by Judith of her right to Howard's share of his pension. *See Ryan,* 659 N.E.2d at 1095. We further note that the trial court's judgment that Judith was entitled to no more than one-half of Howard's pension benefits is consistent with the apparent intent of the parties, as indicated throughout the agreement, to divide virtually all of the marital assets equally.

## *CONCLUSION*

Judith has not demonstrated that the trial court erred as a matter of law when it determined that Judith waived any right she might have had to Howard's share of his pension benefit upon his death. Its summary judgment in favor of the ·Estate is affirmed.

BAILEY, J., concurs.

RUCKER, J., concurs in result.