Gregory J. PUTZ, Appellant–Defendant,

v.

Debra A. ALLIE, Appellee–Plaintiff.

No. 46A03–0205–CV–151.

Court of Appeals of Indiana.

Jan. 16, 2003.

Publication Ordered March 12, 2003.

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Elizabeth A. Flynn, Braje & Nelson, Michigan City, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Gregory Putz ("Putz") appeals a judgment against him on the complaint of his former girlfriend Debra Allie ("Allie") to enforce a contract entered into by the parties upon the termination of their cohabitation. We affirm but remand for a hearing on attorney's fees.

*Issues*

Putz presents two issues for review:

I.  Whether the contract is an unenforceable palimony agreement; and

II.  Whether the contract is unenforceable because Putz signed the agreement under duress.

Allie cross-claims, asserting error in the trial court's denial of attorney fees.

### Facts and Procedural History

On March 22, 1999, Putz and Allie entered into a "Settlement Agreement" (hereinafter "the Agreement") upon the termination of their eleven years of cohabitation. (App.9.) The agreement provided in pertinent part that Putz would pay Allie the sum of forty thousand dollars in installments over six years, pay Allie's health insurance and car payments for one year, and pay off three charge accounts in Allie's name. (App.10.) The Agreement recited in pertinent part that the parties had "commingled funds and contributed financially and emotionally to the betterment of [the parties]" and that "Debbie has contributed time, effort and funds to the business, real estate and asset acquisition." (Ex. 2.) Putz made payments to Allie until he was advised that the agreement was unenforceable.

On May 11, 2000, Allie filed a complaint to enforce the Agreement. (App.7.) On November 28, 2001, Putz unsuccessfully moved for summary judgment, claiming that the Agreement was against public policy. On April 10, 2002, a bench trial was conducted. On May 1, 2002, the trial court

entered judgment in favor of Allie in the amount of $48,112.02.[1] (App.4.) Putz appeals.

## Discussion and Decision

### I. Standard of Review

The trial court found Putz in breach of a valid contract; thus, he appeals from a negative judgment. To prevail on appeal, he must demonstrate that the trial court's judgment is contrary to law. *DiMizio v. Romo*, 756 N.E.2d 1018, 1021 (Ind.Ct.App. 2001), *trans. denied.* A judgment is contrary to law only if the evidence in the record, and the reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* We do not reweigh the evidence or judge the credibility of witnesses. *Id.* A general judgment will be affirmed upon any legal theory consistent with the evidence. *Id.*

■ Indiana courts have recognized that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind.Ct. App.1999). Accordingly, as a general rule, the law allows competent adults the utmost liberty in entering into contracts which, when entered into freely and voluntarily, will be enforced by the courts. *Id.* Nevertheless, courts will refuse to enforce agreements that are contrary to statute or public policy. *Id.*

■ Where the parties have agreed upon consideration of an indeterminate value, this Court will not inquire into the adequacy of that consideration, but will respect the judgment of the parties and enforce the contract. *E & L Rental*

*Equipment, Inc. v. Wade Const., Inc.*, 752 N.E.2d 655, 660 (Ind.Ct.App.2001).

### I. Palimony

■ Putz contends that the Agreement is unenforceable in its entirety because it is in essence a palimony agreement, contrary to the public policy in the State of Indiana. He claims that the contract rests upon no consideration independent of the parties' relationship.

Black's Law Dictionary (Fifth Edition) describes "palimony" as a "term [having] meaning similar to 'alimony' except that award, settlement or agreement arises out of nonmarital relationship of parties." Black's Law Dictionary states that the companion term "alimony" is derived from the Latin word "alimonia" meaning sustenance, and defines alimony as: "allowances which husband or wife by court order pays [the] other spouse for maintenance[.]"

In *Glasgo v. Glasgo*, 410 N.E.2d 1325 (Ind.Ct.App.1980), this Court considered a challenge on public policy grounds made by a former spouse and subsequent cohabitant to a contractual action by his former spouse/cohabitant:

> He contends that claims by nonmarried cohabitants are against public policy in Indiana since the legislature has prohibited common law marriages, citing Ind.Code 31–1–6–1. Laurel states that judicial recognition of Jane's claim permits her to accomplish indirectly what she is prohibited from accomplishing directly and in effect reinstates common law marriages in Indiana.
>
> Jane states that she is not asking to be declared a common law wife, but seeks only to protect her contract rights. She points out that what at one time was

---

1. The judgment included a balance due on the $40,000.00 obligation (after crediting Putz with previous payments), prejudgment interest, several car payments, and the balances on three charge accounts. It did not include reimbursement for health insurance premiums or attorney's fees.

considered an illegal relationship precluding recovery in cases such as hers has come to be recognized as a common occurrence in our society and no longer precludes courts from responding realistically in such disputes.

We agree with Jane.... Jane's claim invoked both contractual and equitable grounds upon which the court could, and ultimately did, afford her relief. Jane did not seek social security benefits or recovery under the laws of intestate succession. Unlike the celebrated Marvin case, there are no support or maintenance payments ("palimony") involved here. Jane did not request, nor did the court grant her, relief based upon the dissolution of marriage statutes.... We do not find that recognition of a claim for a declaration of property rights in specific property to be a claim which reinstates common law marriages....

To apply the traditional rationale denying recovery to one party in cases where contracts are held to be void simply because illegal sexual relations are posited as consideration for the bargain is unfair, unjust, and unduly harsh. Such unnecessary results probably do more to discredit the legal system in the eyes of those who learn of the facts of the case than to strengthen the institution of marriage or the moral fiber of our society. To deny recovery to one party in such a relationship is in essence to unjustly enrich the other....

[A]ny contract in which sexual services serve as consideration are unenforceable and void as against public policy. However, even though such part of a contract may be void, courts may excise the illegal segment and enforce the other provisions.... Where it is possible, courts will construe agreements as being valid rather than void.... Just as married partners are free to delineate in ante- or post-nuptial agreements the nature of their ownership in property, so should unmarried persons be free to do the same.... Recovery would be based only upon legally viable contractual and/or equitable grounds which the parties could establish according to their own particular circumstances....

Intention to pay and expectation of compensation, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue....

While we do not subscribe to the theory that cohabitation automatically gives rise to the presumed intention of shared property rights between the parties, we find in this case that it would be unjust for Laurel to assert in one breath that Jane can in no way be presumed to be his wife for purposes of either the dissolution of marriage statues or the concept of putative spouse and to assert in another the presumption that she rendered her services voluntarily and gratuitously.

*Id.* at 1327–32 (internal citations omitted). Subsequently, in *Bright v. Kuehl,* 650 N.E.2d 311 (Ind.Ct.App.1995), this Court considered the property claim of a nonmarital partner, and specifically determined "that a party who cohabitates with another without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment." *Id.* at 315.

Here, the trial court found that the Agreement properly disposed of jointly acquired property within the parameters of *Glasgo,* although it was "vague in connection to specific acquired assets" and employing a "problematic" reference to pen-

sion rights. (App.5.) The court concluded in pertinent part: "that the purpose of this agreement is solely to divide assets acquired during cohabitation and not an attempt to create rights similar to those afforded parties by the Dissolution of Marriage Act.... Fixed amounts not clearly attributable to any specific items of property acquired resemble liquidated damages, which if not unreasonable in amount are enforceable." (App.5.)

We agree with the trial court that the Agreement may be construed as an agreement fixing liquidated damages in lieu of an unjust enrichment claim by Allie. Allie testified, and Putz did not dispute, that Allie rendered services in Putz's jewelry store for three to five days per week, over a four or five year period of time, without receiving a paycheck, although household expenses were paid from the jewelry store receipts. Over an eleven-year period of time, Allie and Putz co-mingled funds, exerted joint efforts to make the jewelry store a success, and incurred various liabilities (some of which were credit card cash advances on Allie's cards to increase cash flow into the business). The evidence presented before the trial court did not focus upon the details of the personal relationship of the parties and we need not speculate thereon.

The reference to pension rights that the trial court found "problematic" was not accompanied by a corollary allocation of pension funds. Thus we do not conclude, as Putz urges, that Allie sought property rights equivalent to those conferred by the marital dissolution statutes. Moreover, although the trial court's observation that the Agreement was vague as to specific

assets is accurate, the lack of specificity is not fatal to the Agreement. Those who have accumulated property to be divided are in a better position than are the courts to determine the extent and value of their assets. *See generally In re Marriage of Church*, 424 N.E.2d 1078, 1081 (Ind.Ct. App.1981).

█ To support his assertion that Allie is entitled to no recovery from the net business or personal assets, if any, acquired or appreciated during the cohabitation, Putz urges this Court to consider Allie's testimony at the hearing as an admission that the Agreement was designed to compensate Allie only for the personal relationship. The testimony upon which Putz relies is as follows:

Question: So what I want to understand is, if Greg offered to pay your insurance, that was totally voluntary on his part?

Allie: Yes.

Question: Okay, yet it wasn't up for services, and it wasn't for this money that you loaned him, correct?

Allie: It was part of the total agreement of what we agreed he would pay me for us cohabitating for eleven years.

Question: Right. I mean it's more than just the $5000 advance on your credit card bill, and the $10,000 for your mom, it was for you guys living together for eleven years?

Allie: Yes, I guess.

(Tr. 85–86.)[2] We decline to construe the testimony regarding health insurance premiums (which were not awarded to Allie in the judgment) as an admission that the Agreement was designed solely to provide compensation for a personal relationship.

---

**2.** The line of questioning was apparently intended to clarify Allie's immediately preceding testimony to the effect that "none of the Agreement" was for services of a type for which Putz would be entitled to a tax deduction. (Tr. 84.) Allie's attorney moved to strike the response, contending that Allie was misled in the course of cross-examination and the trial court did not make a specific ruling on the motion to strike.

Moreover, notwithstanding an implicit admission by a party at the hearing, on appeal of a negative judgment we reverse the trial court's judgment only if the evidence is without conflict. *DiMizio,* 756 N.E.2d at 1021. The evidence favorable to the judgment indicates that Allie expended significant time in the jewelry business, under circumstances that would not raise a presumption of gratuitousness. Additionally, Allie made various loans to the business and Putz, from cash advances on her credit cards and from life insurance proceeds. The trial court properly concluded that the parties executed an enforceable contract rather than a contract for the payment of "palimony."

## II. Duress

Putz further contends that the Agreement should not be enforced because he executed the agreement under duress. Courts may permit the avoidance of contracts coerced by fear of a wrongful act by the other party to the transaction. *Day v. Bicknell Minerals, Inc.,* 480 N.E.2d 567, 571 (Ind.Ct.App.1985). The ultimate fact to be determined is whether the purported victim was deprived of the free exercise of his will. *Id.*

Putz testified that Allie would not voluntarily move out of his residence absent the Agreement, and that the situation was so stressful to him that he sought medical treatment for depression. He acknowledged that he initiated no legal action to remove Allie from the residence, contending that he "couldn't do that to her or her son." (Tr. 122.) His testimony does not establish that his free will was overcome. As such, the trial court properly concluded that the Agreement is not avoidable as a product of duress.

## III. Attorney Fees

Finally, Allie claims entitlement to reasonable attorney fees. In Indiana, a contract that allows for the recovery of reasonable attorney's fees will be enforced according to its terms unless it is violative of public policy. *Harrison v. Thomas,* 761 N.E.2d 816, 821 (Ind.2002). The trial court did not award any attorney fees to Allie, citing the lack of a specific provision therefore, despite the language of the Agreement as follows:

> 5.C. In the event that Greg breaches this agreement by failing to pay any amount due under this Contract, then in that event, Debbie shall be entitled to interest, from the date of breach, at the rate of eight (8%) percent per annum, and will be entitled to reimbursement for any attorney fees expended in the collection of any monies owed to her by Greg[.]

(Ex. 2.) We therefore remand for a determination of reasonable attorney's fees.

Affirmed; remanded for attorney's fees hearing.

ROBB and BARNES, JJ., concur.

## ORDER

This Court having heretofore handed down its opinion in this appeal on January 16, 2003, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein that one of the issues decided by this Court in said Memorandum Decision is whether a settlement agreement was in actuality a palimony agreement and therefore unenforceable. The Appellant further alleges that prior to the instant case, it appears that there are only two published opinions in this State concerning the rights of parties who cohabit and that due to the small number of published opinions dealing with the subject matter, the legal issues involved in this case are of interest and are

of substantial public importance and prays this Court to publish its Memorandum Decision in this case.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that said Motion should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on January 16, 2003, marked Memorandum Decision, Not for Publication, is now ordered published.