Deborah C. STEINER, Appellant,

v.

BANK ONE INDIANA, N.A., as Trustee of the Trusts created by the Last Will and Testament of Robert C. Batchelder, deceased, Roy Johnson and Robert A. Batchelder, as Co–Personal Representatives of the Estate of Robert C. Batchelder, deceased, Appellee.

No. 02A04–0309–CV–484.

Court of Appeals of Indiana.

March 25, 2004.

Steven L. Jackson, Karen T. Moses, Baker & Daniels, Fort Wayne, IN, Attorneys for Appellant.

David D. Cornwell, Randall L. Morgan, Snyder, Birch, Cornwell & Morgan, LLP, Fort Wayne, IN, Roy R. Johnson, Edris, Brown, Johnson & Feeback, LLP, Bluffton, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Deborah Steiner appeals the trial court's judgment awarding Bank One of Indiana, as Trustee, and Robert Batchelder's Estate a Vanguard IRA, which was the property of her deceased ex-husband, Robert Batchelder. We affirm in part and reverse and remand in part.

### Issues

Steiner raises one issue, which we restate as whether the trial court properly

interpreted a provision of Steiner and Batchelder's property settlement agreement as a waiver of Steiner's expectancy interest in the IRA. As cross-appellants, the Trustee and the Estate raise one issue, which we restate as whether the trial court properly ordered the parties to pay their own attorney fees.

## Facts

Steiner and Batchelder were married in 1973 and divorced in 1999. On March 19, 1999, the parties entered into a detailed property settlement agreement, which was approved in its entirety by the trial court and incorporated in the decree of dissolution. The settlement agreement provided in part:

1.1 The subject matter of this Agreement is the settlement of the respective rights of Husband and Wife to all property, both real and personal, now in their name and/or possession, and the consideration to be paid by Husband and Wife in complete discharge of their relative legal obligations to each other arising out of the marital relationship.

\* \* \* \* \*

2.1 As a full and final settlement of the parties' joint property and net worth, and to make settlement with Husband, Wife shall be given, granted and awarded as her sole property, free and clear of any and all claims which Husband may have therein or thereto, the following assets:

\* \* \* \* \*

2.1.3 Any intangible assets, including but not limited to stock and/or bonds which are in the sole name of the Wife;

\* \* \* \* \*

4.1 As a full and final settlement of the parties' joint property and net worth,

and to make settlement with Wife, Husband shall be given, granted and awarded as his sole property, free and clear of any and all claims which Wife may have therein or thereto, the following assets:

\* \* \* \* \*

4.1.15 Husband's Vanguard account;

\* \* \* \* \*

9.1 Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof.

\* \* \* \* \*

13.1 In consideration of all the promises contained in this Agreement, Husband and Wife hereby release all claims and rights which either ever had, now has or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this Agreement. It is the intent hereof that each party accepts the provisions of this Agreement in full release and settlement of any and all claims and rights against the other. . . .

\* \* \* \* \*

13.5 Husband and Wife each forever relinquish, renounce, release and waive to the heirs, devisees and legatees of the other any and every right to inherit in any manner from the other, and the right for any person to receive any property from the other upon the death of the other, except that only and solely by

reason of a Will executed or confirmed by codicil, subsequent to the date hereof.

\* \* \* \* \*

16.1 Unless otherwise provided for herein, *Husband and Wife each waive the rights and/or benefits which might hereafter arise as a result of either spouse being designated as a beneficiary under any insurance policies, IRAs,* retirement benefits, or other property owned by the other spouse.

Appellant's App. pp. 129–137 (emphasis added).

Steiner was named the primary beneficiary of the Vanguard IRA on May 15, 1989. The Trustee, who was to create trusts for the support, education, and general welfare of Batchelder's father and Steiner's sister, was named the secondary beneficiary of the IRA. Batchelder never changed his will, which was created in 1994, or the designated beneficiaries of the IRA. He died on December 31, 2002. Pursuant to Indiana Code Section 29–1–5–8,[1] all provisions of Batchelder's will in favor of Steiner were revoked upon the dissolution of their marriage, and the trust became the sole beneficiary of Batchelder's will.

Batchelder's Estate informed Vanguard that pursuant to the settlement agreement Steiner had waived her right to any benefits she may have been entitled to as the primary beneficiary of the IRA. The Estate urged that the Trustee should collect the benefits of the IRA. Vanguard refused to pay the benefits to the Trustee unless Steiner signed a disclaimer. Steiner refused to sign the disclaimer.

On July 31, 2002, the Estate filed a motion to compel disclaimer and for de-

claratory judgment against Steiner and Vanguard. Following a hearing on the matter, the trial court entered judgment in favor of the Trustee and the Estate and awarded the IRA to the Trustee. The trial court also ordered the parties to pay their own attorney fees. Steiner now appeals, and the Trustee and the Estate cross-appeal.

### Analysis

■■■ The trial court entered findings of fact and conclusions thereon. "On appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In applying this rule, we consider whether the evidence supports the findings. *Kesler v. Marshall,* 792 N.E.2d 893, 895 (Ind.Ct.App.2003), *trans. denied.* Then we determine whether the findings support the judgment, construing the findings liberally in support of the judgment. *Id.* A judgment is clearly erroneous if it is unsupported by the findings of fact and conclusions thereon. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Instead, we consider the evidence supporting the judgment and the reasonable inferences drawn therefrom. *Id.* at 896. The facts of this case are essentially undisputed and the parties' do not challenge the trial court's findings of fact, leaving us to determine whether the trial court's findings support the judgment.

■■■ The interpretation and construction of a contract is a function for the courts. *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App.2000). In interpret-

---

**1.** Indiana Code Section 29–1–5–8 provides in part, "If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked."

ing a contract, we are compelled to view a particular section as a whole rather than examine each phrase therein in isolation. *Oxford Financial Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1142 (Ind.Ct.App.2003). "Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning." *Niccum,* 734 N.E.2d at 639. The terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. *Id.* "Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions." *Id.* These general rules apply to marital property settlement agreements. *Id.*

### I. IRA[2]

Steiner argues that the settlement agreement is insufficient to constitute a waiver of her rights to the IRA as a designated beneficiary. The Estate responds that pursuant to the specific language of the settlement agreement addressing beneficiary designations, Steiner waived any expectancy interest she had in the IRA.

■ The parties agree that at the time Steiner and Batchelder entered into the settlement agreement, Steiner did not have a present property interest in the IRA. Instead, as the designated beneficia-

ry, she had an expectancy interest in the IRA. *See Graves v. Summit Bank,* 541 N.E.2d 974, 979 (Ind.Ct.App.1989) ("At the time of the entry of the Property Settlement Agreement, Graves possessed no property right in the IRA. She merely had an expectancy."), *trans. denied; Wolf v. Wolf,* 147 Ind.App. 246, 251, 259 N.E.2d 96, 99 (1970) (beneficiary's interest in an insurance policy at the time of the settlement agreement was "a mere expectancy or possibility and not a property right, interest, or title capable of being construed within the general term 'personal property' as used in the settlement agreement."). The parties also agree that under certain circumstances an expectancy interest can be waived. *See Von Haden v. Von Haden,* 699 N.E.2d 301, 305–06 (Ind.Ct.App.1998). In order for a waiver to be valid, the waiver must be made knowingly, voluntarily, and intelligently. *Id.* at 304.

In support of her argument that she did not waive her expectancy interest in the IRA, Steiner relies on *Rishel v. Rishel,* 781 N.E.2d 735 (Ind.Ct.App.2003).[3] In that case we addressed whether, pursuant to a property settlement agreement, a former wife waived her expectancy interest in the proceeds of her former husband's retirement fund and annuities upon his death. *Id.* at 736. The settlement agreement provided:

---

**2.** Steiner argues that by creating the IRA, Batchelder and Vanguard entered into a contract providing that upon his death, Vanguard would pay the benefits of the IRA to the designated beneficiary. She contends, "To pay the proceeds to anyone else is to rewire the terms of Robert's contract with Vanguard." Appellant's Br. p. 22. Although we recognize Steiner's point, our focus is not whether the designated beneficiary could be changed, rather our focus is whether Steiner waived her rights to receive benefits of the IRA pursuant to the settlement agreement.

**3.** The trial court and Steiner cite to several cases from other jurisdictions. We need not look to other jurisdictions, however, because there is Indiana case law directly on point. *Smith v. Beneficial Finance Co. of Indianapolis,* 139 Ind.App. 653, 655, 218 N.E.2d 921, 922 (1966) ("Many courts turn to decisions of tribunals in other jurisdictions to aid them through analogy or interpretation, in deciding their own cases. This practice is appropriate when there is a lack of authority in a court's own jurisdiction, but where authority exists, a court is bound to give it primary consideration.").

6. *RETIREMENT PLANS.* The retirement plans in which [Michael] is a participant shall be set off to him as his sole and separate property, free of any claim of [Teresa]. The retirement plans in which [Teresa] is a participant shall be set off to her as her sole and separate property, free of any claim of [Michael].

\* \* \* \* \*

9. *HUSBAND'S ASSETS.* [Michael] is the owner of assets which are titled in his name alone, as shown by the financial statement attached hereto as Exhibit A. These include bank deposits at Lafayette Bank & Trust Co., an ISTA retirement fund of $71,055.45, Fortis Annuities, and an AUL Group annuity. These assets have a value of approximately $90,000. All assets identified on Exhibit A hereto which are titled in Husband's name alone are hereby set off to Husband as his sole and separate property, free of any claim of [Teresa].

*Id.* at 737 (alterations in original). Shortly, after the marriage was dissolved Michael died. *Id.*

▆▆▆ After analyzing prior case law on point, we held that Teresa did not waive her right to be Michael's beneficiary by entering into the settlement agreement awarding ownership of the retirement account and annuities to Michael. *Id.* at 742. We concluded that the "free of any claim" language in the settlement agreement was not "broad enough to encompass a waiver of Teresa's expectancy interest." *Id.* Thus, Teresa was entitled to the proceeds of the retirement account and annuities. *Id.* at 743.

The Estate relies on a case in which we reached the opposite result, *Von Haden v. Von Haden,* 699 N.E.2d 301 (Ind.Ct.App. 1998). In that case, the parties entered into a property settlement agreement that provided:

*Mutual Releases.* In consideration of all the promises contained in this agreement, *Petitioner and Respondent hereby release all claims and right which either ever had, now has, or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement.* It is the intent hereof that each party accepts the provisions of this agreement in full release and settlement of any and all claims and rights against the other. It is the further agreement of the parties that the provisions of this agreement shall inure to the benefit of, and be binding upon, the heirs, executors, administrators, and personal representatives of the parties.

*Id.* at 304–05 (emphasis added). The settlement agreement also provided, "The parties' UTA Savings Plan shall be divided as follows: The petitioner and Respondent shall each receive as their separate property one half (1/2) of the non-taxable amount and one-half (1/2) of the remaining taxable amount." *Id.* at 304. Howard died after the marriage was dissolved, and Judith, the named beneficiary of Howard's half of the account, was issued the entire balance of the account. *Id.* at 303. Howard's Estate claimed his one-half interest in the account pursuant to the settlement agreement. *Id.* The trial court granted the Estate's motion for summary judgment. *Id.*

On appeal, we considered that the account was governed by ERISA, preempting state law in certain circumstances, that Judith clearly agreed to accept only half of the proceeds, and that when the marital pot was divided, the parties and the court considered the cash value of the IRA at the time of the separation, not the value of

the expectancy interest. *Id.* at 305. We concluded that given the explicit language of the settlement agreement, the trial court did not err in finding that such language was broad enough to encompass a waiver by Judith of Howard's half of the account. *Id.*

Although Steiner emphatically urges us to interpret the contract in her favor, the plain language of the contract does not allow for such a reading. Section 13.1 of the settlement agreement is nearly identical the language relied on by the *Von Haden* court. It provides in part:

> Husband and Wife hereby release all claims and right which either ever had, now has or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this Agreement.

Appellant's App. p. 135. Although the settlement agreement does not provide that Steiner agreed to receive only one-half of the IRA, as in *Von Haden*, section 13.5 of the agreement addresses the parties' right to receive any property from the other upon death and section 16.1 of the agreement specifically addresses the waiver of the beneficiary designation in the IRA.

Section 13.5 of the settlement agreement provides:

> Husband and Wife each forever relinquish, renounce, release and waive to the heirs, devisees and legatees of the other any and every right to inherit in any manner from the other, *and the right for any person to receive any property from the other upon the death of the other,* except that only and solely by reason of a Will executed or confirmed by codicil, subsequent to the date hereof.

Appellant's App. p. 136 (emphasis added). Although Steiner contends that this section applies only to the parties' rights to inherit from each other, it goes beyond inheritance and addresses the parties' rights to receive *"any property"* upon the other's death. *Id.*

More importantly, however, our analysis rests on section 16.1 of the settlement agreement, which provides:

> Unless otherwise provided for herein, *Husband and Wife each waive the rights and/or benefits which might hereafter arise as a result of either spouse being designated as a beneficiary under any insurance policies, IRAs,* retirement benefits, or other property owned by the other spouse.

Appellant's App. p. 137 (emphasis added). This language is directly on point with our analysis today [4] because, specifically stated, the issue before us is whether Steiner waived her right to the benefits of Batchelder's IRA that arose as a result of her being a designated beneficiary.

Although Steiner presents several different interpretations of section 16.1 and suggests alternative ways in which this

---

4.  Steiner argues that section 16.1 is not applicable to our analysis because it states, "[u]nless otherwise provided for herein." Appellant's App. p. 137. She contends that section 2.1.3 of the settlement agreement distributing intangible assets, specifying for example stocks and bonds, in Steiner's name applies to the expectancy interest. She provides no support for her assertion that an expectancy interest is considered an intangible asset similar in nature to a stock or that the parties' intended it to be considered as such. She does not address the present property interest that one has in stocks and bonds compared to the mere expectancy interest one has in being named a beneficiary. She also fails to reconcile this language with the specific language of section 16.1, which addresses the beneficiary designation of the IRA. Accordingly, this argument is unpersuasive.

section might have been written in an attempt to create an ambiguity, the terms of the settlement agreement are not ambiguous merely because the parties disagree as to their interpretation. *See Niccum*, 734 N.E.2d at 639. Steiner argues that it is unclear whether Batchelder intended to remove Steiner as a designated beneficiary of the IRA. However, section 16.1 clearly and unambiguously sets forth that she waived any benefits arising as the result of being a designated beneficiary regardless of Batchelder's intent to remove her as a designated beneficiary. Because the terms of the settlement agreement are clear and unambiguous, they will be given their plain and ordinary meaning. *See id.* Thus, we need not determine whether Batchelder intended to remove Steiner as his designated beneficiary because pursuant to the settlement agreement she waived the rights to any benefits of being a designated beneficiary of the IRA.

Steiner also makes two inconsistent arguments. She argues that section 1.1 of the settlement agreement specifically sets forth that the agreement applied to property then in the parties' possession and that the expectancy interest was not then in their possession. She then argues that under provision 2.1.3 of the settlement agreement, the expectancy interest was an intangible asset, which was awarded solely to her. If the expectancy interest was not property in the parties' possession under section 1.1 and not subject to distribution via the settlement agreement, then we fail to see how it could also be an intangible asset awarded to her under 2.1.3. Given the precise language of section 16.1, we conclude that when reading the settlement agreement in its entirety the parties intended to address any expectancy interests arising out of being a designated beneficiary in this section, not in sections 2.1.3 or 1.1.

Unlike *Rishel*, in which none of the other provisions of the property settlement agreement addressed a waiver of future expectancy interests, the settlement agreement here, when read as a whole, clearly demonstrates Steiner's intent to waive her rights to the benefits of the IRA. *See Rishel*, 781 N.E.2d at 742. This is not a situation involving a settlement agreement containing a general relinquishment of claims and rights; instead, the parties' settlement agreement here specifically addressed the waiver of the benefits associated with being a designated beneficiary of the IRA. *See id.* Finally, sections 13.1, 13.5, and 16.1 together go even further than the language in *Von Haden*, which was sufficient to constitute a waiver of an expectancy interest. *See Von Haden*, 699 N.E.2d at 305. The trial court correctly concluded that Steiner waived the benefits arising as a result of being a designated beneficiary of the IRA.

### II. Attorney Fees

■■■ On cross-appeal, the Trustee and the Estate argue that pursuant to the settlement agreement they are entitled to attorney fees. Section 9.1 of the agreement provides:

> Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof.

Appellant's App. p. 134. Although the Trustee and the Estate requested attorney fees, the trial court ordered the parties to pay their own attorney fees.

■■■ A contract that allows for the recovery of attorney fees will be enforced according to its terms unless it violates public policy. *Putz v. Allie*, 785 N.E.2d 577, 582 (Ind.Ct.App.2003), *trans. denied.* Section 12.1 of the settlement agreement

requires the parties to execute additional documents as may be necessary to carry out the terms and intent of the agreement. Steiner refused to execute a disclaimer,[5] which was required before Vanguard would pay the benefits of the IRA to the Trustee. Because we concluded that Steiner waived her right to the benefits of the IRA, she breached the contract by refusing to execute the disclaimer. Thus, the Trustee and the Estate are entitled to attorney fees[6] pursuant to the settlement agreement.

## Conclusion

Pursuant to the terms of the settlement agreement with Batchelder, Steiner waived her rights to any benefits of the IRA arising as a result of her being a designated beneficiary. Because the settlement agreement contained a provision requiring the payment of attorney fees upon breach and Steiner refused to execute a disclaimer of her interest in the IRA, the trial court erred in ordering the parties to pay their own attorney fees. The trial court should have granted the Trustee's and the Estate's request for attorney fees. We affirm in part and reverse and remand in part.

Affirmed in part and reversed and remanded in part.

KIRSCH, C.J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur with respect to Part I. However, I respectfully dissent as to Part II.

The dispute resolved today is a dispute litigated in good faith by both parties. Each party has advanced plausible argument and each position finds a degree of support in Indiana case law. Accordingly, prior to our decision today, and although the trial court found for the Estate, it would not have been appropriate to conclude that Steiner breached the contract by refusing to sign the disclaimer.

By hindsight, it may be stated that Steiner did in fact breach the contract. But such breach, given the legitimate dispute between the parties, is not, in my view, a basis for reversing the trial court's order for each party to pay their own attorney fees.

I would affirm the judgment of the trial court in all respects.

---

5. Steiner argues that there is no evidence, except the Trustee's and the Estate's allegation in their motion to compel, that Steiner refused to sign the disclaimer. Given the status of the case today, it is evident that Steiner refused to sign the disclaimer.

6. Steiner argues that the Trustee and the Estate did not submit any evidence of the nature of fees requested, and that their failure to do so waives the claim. Steiner fails to support this argument with any citation to authority. A party waives any issue for which it fails to develop a cogent argument or support with adequate citation to authority. *Romine v. Gagle,* 782 N.E.2d 369, 386 (Ind.Ct.App.2003) (citing Ind.App. R. 46A(8)), *trans. denied.*