Mark **PLUMMER** and Shari Plummer, Appellants–Defendants,

v.

**GITTLEMAN, PASKEL, TASHMAN AND WALKER, P.C.,** Appellees–Plaintiffs.

No. 12A02–0403–CV–00200.

Court of Appeals of Indiana.

Dec. 21, 2004.

Publication Ordered Feb. 4, 2005.

Mark L. Abrell, David J. Karnes, Dennis, Wenger, & Abrell, P.C., Muncie, IN, Attorneys for Appellant.

Sherrill Wm. Colvin, Robert W. Eherenman, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Mark and Shari Plummer appeal the trial court's judgment in favor of Robert Gittleman of Gittleman, Paskel, Tashman, and Walker, P.C., in the amount of $45,000 for services Gittleman performed during his representation of the Plummers. We affirm.

### Issue

The Plummers raise two issues for our review, which we consolidate and restate as whether the trial court properly awarded attorney's fees to Gittleman.

### Facts and Procedural History

On December 24, 1999, Mark and Shari Plummer's five-year-old son, Joshua, was killed when Mark Plummer's vehicle, in which Joshua was a passenger, collided

with a Norfolk Southern Railway Company freight train. The Plummers subsequently contacted Gittleman to discuss any possible claims against Norfolk Southern. Gittleman was licensed to practice law within the State of Michigan but not within the State of Indiana.

On January 31, 2000, the Plummers executed identical Retainer Agreements (collectively, "Agreement") employing Gittleman and Sherrill Wm. Colvin of Haller & Colvin to represent them in any claims that arose from Joshua's death. Colvin was licensed to practice law within the State of Indiana. The Plummers, Gittleman, and Colvin each signed the Agreement.

During his representation of the Plummers, Gittleman provided legal advice to the Plummers, investigated the scene of the collision and interviewed potential witnesses, sent out tort claim notices to governmental entities and political subdivisions pursuant to Indiana law, and pursued negotiation and settlement with Norfolk Southern on the Plummers' behalf.

Subsequently, Gittleman obtained a settlement offer from Norfolk Southern for $135,000, which he recommended that the Plummers accept, mainly due to the weaknesses of their potential claims. Instead, the Plummers insisted on filing suit, rejected Norfolk Southern's settlement offer, and eventually discharged Gittleman and Colvin as their attorneys.

The Plummers did not hire other legal counsel or initiate any legal proceedings, but instead entered into settlement negotiations directly with Norfolk Southern and settled their potential claims for $155,000. Gittleman placed an attorney lien on the Plummers' settlement proceeds for expenses arising out of his representation and filed a complaint against the Plummers to enforce the Agreement or, in the alternative, to allow recovery of attorney's fees under the theory of quantum meruit. The Plummers answered and counterclaimed that Gittleman provided erroneous advice as to the value of the Plummers' claims against Norfolk Southern, and that because Gittleman was not licensed to practice law in the State of Indiana, he was not entitled to attorney's fees. After a bench trial, the trial court found in favor of Gittleman in the amount of $45,000 for attorney's fees. The Plummers now appeal. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Standard of Review

We note at the outset that the trial court entered specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Thus, we apply a two-tiered standard of review. *Counceller v. Counceller*, 810 N.E.2d 372, 377 (Ind.Ct. App.2004). First, we determine whether the evidence supports the trial court's findings. *Id.* Next, we determine whether the findings support the judgment. *Id.* We will not disturb the trial court's findings or judgment unless we determine they are clearly erroneous. *Id.* Findings of fact are clearly erroneous only if there is no evidence present in the record to support them. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Steiner v. Bank One Indiana, N.A.*, 805 N.E.2d 421, 424 (Ind.Ct.App.2004).

### II. Out–of–State Attorney Entitled to Fees

The Plummers first contend the trial court erred in granting attorney's fees to Gittleman because Gittleman was not admitted to practice law in the State of Indiana. The issue of whether an out-of-

state attorney, assisted by local counsel, may recover attorney's fees for work conducted in preparation of future litigation is a matter of first impression in Indiana courts. However, in *Freeman v. Mayer*, 95 F.3d 569 (7th Cir.1996), an employee was left a quadriplegic after being injured at his place of employment in Indiana. The employee's in-laws contacted a family friend, William Freeman, who was an attorney in Illinois. Freeman began an investigation of the accident to determine whether the employee had any potential claims as a result of his injury. Freeman studied the accident scene, took photographs, and hired a private investigator to gather information. Subsequently, the employee's wife executed a written retainer agreement employing Freeman to pursue any claims she and her husband might have as a result of her husband's injury. The agreement included a contingency fee arrangement whereby Freeman would receive thirty-three and one-third percent of any sum collected by the employee and his wife either by suit or settlement. *Id.* at 570.

Freeman began preparation for a potential lawsuit by conducting liability investigation, research, medical documentation, and conferences in both Indiana and Illinois with the employee and his wife. Because he was not admitted to practice law in Indiana, Freeman hired Richard Mayer, an Indiana attorney, as local counsel. They agreed to a fee-sharing arrangement, and even though the employee and his wife did not sign a written retainer agreement with Mayer, they verbally consented to the fee-sharing arrangement. *Id.* at 570–71.

Mayer subsequently filed suit on behalf of the employee and his wife. The complaint included Freeman's name, but due to an oversight by Mayer, Freeman did not file the necessary paperwork to appear *pro hac vice*. Mayer then conducted extensive discovery, filed multiple motions, and conducted a full jury trial, which resulted in a judgment in favor of the employee and his wife. Freeman did not take part in any of the trial preparation but did keep in contact with the employee's wife and appeared as counsel of record at the trial. Subsequently, a dispute arose between Freeman and Mayer as to the appropriate division of fees under their fee-sharing arrangement. Freeman sued Mayer to recover his portion of the fees, and the district court granted Freeman summary judgment. *Id.* at 571–72.

On appeal, Mayer argued that the fee-sharing arrangement was void because Freeman was not admitted to practice law in Indiana and thus should not be allowed to recover attorney's fees for the work he conducted prior to the filing of suit. The Seventh Circuit Court of Appeals held, under Indiana law, that Freeman was entitled to an equal share of the fees for the extensive investigation he conducted prior to the commencement of litigation, even though he was not licensed to practice law in Indiana and had failed to file the necessary paperwork to appear *pro hac vice*. *Id.* at 575–76. The court stated,

It would be unfortunate indeed for our economy, which is no longer "merely" national but increasingly international, to strain to interpret the Indiana Rules of Professional Conduct in a way that would discourage ... clients from seeking out the lawyer of their choice, no matter what state the lawyer may be licensed in. Freeman did nothing unusual: he took a case for old friends, he associated himself with local counsel when it appeared that court proceedings in another jurisdiction would be required, and he reduced his agreement both with his client and his co-counsel to writing.

*Id.* at 576.

■ The instant case is analogous to the facts in *Freeman*. Through a common

acquaintance, the Plummers contacted Gittleman to investigate any potential claims they might have had against Norfolk Southern. Gittleman associated himself with local counsel, Colvin, in anticipation of filing a lawsuit. Gittleman and Colvin executed a written retainer agreement with the Plummers. Finally, if litigation had been commenced in this case, it appears Gittleman could have been admitted to practice law in Indiana *pro hac vice.* Therefore, the trial court did not err in awarding attorney's fees to Gittleman even though he was not licensed to practice law in the State of Indiana.

### III. Discharge Under the Agreement

 The Plummers next contend Gittleman's refusal to file a lawsuit on their behalf constituted a breach of the Agreement, so Gittleman should not be allowed to recover attorney's fees under the Agreement. The Agreement provided, in pertinent part,

> [We, the Plummers,] do hereby employ and retain ROBERT GITTLEMAN (P14025) of GITTLEMAN, PASKEL, TASHMAN AND WALKER, P.C., and SHERRILL WM. COLVIN (# 3318–02) of HALLER & COLVIN, Attorneys at Law, to institute legal proceedings on behalf of myself and my deceased son, JOSHUA PLUMMER against **NORFOLK AND SOUTHERN RAILROAD,** or such other parties that may be deemed a proper defendant or respondent to recover damages for injuries sustained on or about the 24th day of December, 1999, as a result of an automobile/train collision and I do hereby agree with our said attorneys to pay them from any settlement or trial proceedings according to the following: 33–1/3% of any sums recovered on our behalf up to mediation; 36% after mediation, and 40% if said attorneys appear at a trial date, plus costs.

. . .

> I hereby agree with our said attorneys not to make any settlement unless they are present and received [sic] their share in accordance with this agreement. *In the event I desire to change attorneys, then the attorneys shall be paid all cost[s] then expended and the agreed upon aforesaid percentage of any offer of settlement obtained* or, if no offer of settlement has been made, then all cost[s] expended and one-half of the aforesaid percentages upon all monies subsequently obtained by ourselves or any representative in our behalf.

Appellant's Appendix at 16–17 (bold emphasis in original, additional emphasis added).

The evidence presented at trial shows that on June 14, 2000, and again on July 31, 2000, Gittleman sent a letter to the Plummers, informing them that any potential claims against Norfolk Southern arising from Joshua's death were weak. On October 3, 2000, Gittleman sent a third letter to the Plummers, stating that in his professional opinion, the Plummers should accept Norfolk Southern's settlement offer of $135,000. In none of these letters to the Plummers did Gittleman refuse to file a lawsuit on the Plummers' behalf; instead, Gittleman merely informed the Plummers that any claims against Norfolk Southern were likely to lose at trial. The Plummers testified that sometime in the fall of 2000, they discharged Gittleman because he would not file a lawsuit on their behalf. In February 2001, Gittleman contacted the Plummers about being discharged and warned them that the statute of limitations on their claims would run on December 24, 2001. Again, Gittleman did not tell the Plummers that he would not file a lawsuit on their behalf. Because the Plummers accepted the terms in the

Agreement and failed to present any evidence to support their contention that Gittleman breached the Agreement, the trial court did not err in finding that Gittleman was entitled to thirty-three and one-third percent of the $135,000 settlement offer he obtained on behalf of the Plummers.[1]

### Conclusion

Gittleman was entitled to recover attorney's fees under the Agreement with the Plummers, even though he was not licensed to practice law in the State of Indiana. Furthermore, the trial court did not err in finding that Gittleman did not breach the Agreement with the Plummers. For these reasons, Gittleman was entitled to thirty-three and one-third percent of the settlement offer of $135,000 he obtained on behalf of the Plummers. Therefore, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, C.J., and BAKER, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on December 21, 2004, marked Memorandum Decision, Not for Publication.

Comes now the Appellee, by counsel, and files herein its Motion to Publish Not for Publication Memorandum Decision, alleging therein that this appeal involves a matter of first impression namely, whether an out-of-state attorney, assisted by Indiana local counsel, may recover attorney's fees for work conducted in preparation of future litigation. This Court held that Gittleman, an out-of-state attorney, who associated himself with Indiana local counsel, and, in anticipation of filing a lawsuit, could recover attorney fees even though Gittleman was not licensed to practice law in the State of Indiana. Said Motion further alleges that by finding Gittleman was entitled to recover attorney's fees under the fee arrangement with the client, this Court has ruled on a very important legal issue that will provide guidance to both local Indiana counsel and out-of-state attorneys who wish to work with them.

The Court having examined said Motion, having reviewed its opinion and being duly advised, now finds that said Motion to Publish should be granted.

IT IS THEREFORE ORDERED that the Appellee's Motion to Publish Not for Publication Memorandum Decision is GRANTED, and this Court's decision heretofore handed down in this cause on December 21, 2004, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges Concur.

---

1. Because we conclude that the trial court properly awarded Gittleman attorney's fees under the Agreement, we need not address whether the trial court erred in awarding Gittleman attorney's fees under the theory of quantum meruit.